UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:21-cv-01257-O |
| § | |
| CATHY ELAINE CHESSER, *et al.*, § | |
| § | |
| Defendants. § | |

**OPINION AND ORDER**

Before the Court are Plaintiff's Motion for Summary Judgment, Brief in Support, and Appendix (ECF Nos. 62–64), filed April 19, 2023; Defendants' Cross Motion for Summary Judgment, Brief in Support, and Appendix (ECF Nos. 72–74), filed May 24, 2023; Plaintiff's Response and Brief in Support (ECF Nos. 75–76), filed June 6, 2023; and Defendants' Amended Reply (ECF No. 81), filed June 23, 2023. After review of these pleadings, the Court set this matter for a bench trial. *See* Order, ECF No. 78. Following presentation of the evidence, the parties presented final arguments and the Court has utilized the summary judgment briefing as trial briefs. For the reasons stated herein, Plaintiff's request for declaratory judgment is **DENIED IN PART** and **GRANTED IN PART**.

I.     **FACTUAL BACKGROUND**[1]

The United States Army Corps of Engineers ("ACE") uses Proctor Lake and its surrounding land to control flooding. In 1961, the United States Government (the "Government" or "Plaintiff") acquired a flowage easement (the "Easement") from Paul and Linda Gray who

---

[1] Unless otherwise noted, the facts are taken from the Proposed Stipulation (ECF No. 84).

owned land surrounding Proctor Lake. The Easement gives the Government the right to occasionally flood that property. The Easement also prohibits the construction or maintenance of any structure for human habitation but allows for structures and/or appurtenances to be placed on the Easement with the consent of the Government.

The Easement was recorded in the Comanche County public records on February 22, 1961. The Easement covered approximately one hundred acres on Tracts 115E-1, 115E-3, and 1115E-4. Eventually, Tract 115E-1 was sold to developers, who divided the lot into smaller parcels and called it Buffalo Springs Subdivision. Between 1966 and 1978, the Government repeatedly approved trailer parks for rental and personal use on the Easement.[2] In 1978, ACE issued a memorandum entitled, "Mobile Homes and Travel Trailers on Flowage Easement Lands."[3] The memorandum defined "structure for human habitation" as "a structure which contains amenities conducive to human occupancy such as sanitary, cooking, and sleeping facilities, and which, by design, is intended to remain in one location on a permanent or semi-permanent basis."[4] The Government later reversed this position and in various forms attempted to prohibit travel trailers and other objects on Defendants' property.

The Easement specifically allows the Government to "occasionally overflow, flood and submerge the land" but reserves the landowners' "rights and privileges" to use and enjoy the land.[5] However, "no *structure for human habitation* shall be permitted to remain or be constructed on said lands," and the landowners must receive "the written consent of the representative of the United States in charge . . . for the type and location of any *structure* and/or appurtenance thereto

---

[2] Joint Ex. 3, 5, 6, 8, 9, ECF No. 83.
[3] *Id.* at Ex. 9.
[4] *Id.*
[5] *Id.* at Ex. 2.

now existing or to be erected or constructed."[6] Critically, "structure for human habitation" and "structure" are not defined in the Easement. The proper construction of these terms is the main subject of this dispute.

Defendants are six property owners ("Defendants")[7] whose land is on the Buffalo Springs Subdivisions and is encumbered by the Easement. Defendants have various items such as RVs, travel trailers, sheds, manufactured homes, and electrical lines on their properties. The Government contends these items are prohibited under the Easement.

The Government filed this action claiming that Defendants violated the Easement by placing various "structures for human habitation" and other "structures" on the Easement that were not authorized by ACE. Specifically, the Government complains that Defendants' RVs, travel trailers, manufactured home, and other unauthorized structures pose a serious risk to ACE's flood control operations. In its briefing, the Government notes that "[w]hen waters rise, the Defendants' structures are at risk of floating away," which they did during a flood in 2016.[8] The Government also highlights that Defendants may become trapped in their trailers if flood waters rise too quickly and that unapproved electric utility lines pose a significant risk to public safety.[9]

---

[6] *Id.* (emphasis added).
[7] For the purposes of this Order, Defendants are Cathy Elaine Chesser, James Drake, Joe and Sandra Keating, James Bowen, Robert and Burma Brummitt, D. Stacey Green, and Alfonso Bill. Alfonso Bill did not respond to Plaintiff's Amended Complaint or Motion for Summary Judgment. Because the structures at issue on Bill's property are identical to the other Defendants, the Court finds that Defendant Bill is entitled to the same relief.
[8] Pl.'s Br. in Support of Am. Mot. for Summ. J. (hereinafter "Pl.'s Br. for Summ. J.") 30, ECF No. 63.
[9] *Id.* at 30 n.9 ("For example, in 2017 at Lake 'O The Pines in East Texas, three Boy Scouts were electrocuted when power lines made contact with their boat." (citing Katie Mettler & Alex Horton, *Third Boy Scout Dies after Electric Shock in Sailing Accident*, WASH. POST (Aug. 7, 2017), https://www.washingtonpost.com/ news/morning-mix/wp/2017/08/07/boy-scouts-sailing-lesson-turns-deadly-when-mast-strikes-power-lines-on-texas-lake/).

The Government seeks a declaratory judgment enjoining Defendants from maintaining unauthorized structures on the Easement and ordering Defendants to remove all habitable structures from the Easement. The following chart summarizes the alleged structures at issue:

| Defendant | Structure |
|---|---|
| Defendant Chesser | <ul><li>Two Travel Trailers.</li><li>Two Inoperable Motor homes.</li><li>One Shed.</li><li>Electric Utilities.</li></ul> |
| Defendant Drake | <ul><li>One Travel Trailer.</li><li>One Storage Shed.</li><li>Electric Utilities.</li></ul> |
| Defendant Bowen | <ul><li>One Manufactured Home.</li><li>Electric Utilities.</li></ul> |
| Defendants Joe and Sandra Keating | <ul><li>Three Travel Trailers.</li><li>One Shed.</li><li>One Covered Patio.</li><li>One Porch.</li><li>Electric Utilities.</li></ul> |
| Defendants Robert and Burma Brummitt | <ul><li>Two Travel Trailers.</li><li>Two Sheds.</li><li>One Covered Patio.</li><li>Electric Utilities.</li></ul> |
| Defendant Green | <ul><li>One Carport.</li><li>Electric Utilities.</li></ul> |
| Defendant Bill[10] | <ul><li>One Travel Trailer.</li><li>One Carport.</li><li>One Porch.</li></ul> |

For the purposes of this Order:

- Travel trailers are recreational trailers that are towed behind a vehicle but can also include fifth wheels, pop-up campers, toy haulers, and other similar trailers or campers.

- A motor home is a self-propelled recreation vehicle ("RV").

---

[10] Pl.'s Am. Compl. Ex. II, ECF No. 59.

- Manufactured homes are factory-built residences that can be placed on a plot of land.

## II.   DECLARATORY JUDGMENTS

The Government seeks a declaratory judgment against Defendants under Tex. Prop. Code. § 22.001, interference with the use of the Easement, and 36 C.F.R. § 327.20.[11] Defendants claim that a declaratory judgment is improper under Tex. Prop. Code. § 22.001 and § 36 C.F.R. § 327.20. Nevertheless, the Court does not reach the merits of this argument because Defendants, in certain aspects, are encroaching on the Easement. Under Texas law, "it is well settled that due enjoyment of an easement will be protected by injunction against encroachments or obstructions." *Gillett v. Van Horne*, 36 S.W.2d 305, 306 (Tex. Civ. App.—El Paso 1931, writ dism'd w.o.j.). Therefore, the Court has authority to enter a declaratory judgement in this case.

## III.   LEGAL STANDARD

### A.   Plaintiff's Burden

The "plaintiff has the burden of supplying proof necessary to establish . . . [a] right to relief." *Robinson v. Wells Fargo Bank, N.A.*, 576 F. App'x 358, 364 (5th Cir. 2014) (per curiam) (citing *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied, aff'd, 699 F. App'x 393 (5th Cir. 2017)); *see also City of Mission v. Popplewell*, 294 S.W.2d 712, 713, 717 (Tex. 1956) (holding that the government had the burden to prove it was entitled to relief in the form of an injunction restraining the defendant from obstructing a government property). The Government filed this lawsuit. It, therefore, carries the burden to prove it is entitled to the declaratory relief it seeks.

---

[11] Pl.'s Am. Compl. 17–21, ECF No. 59.

### B. Construction of Easement Terms

Because Texas law controls the Government's claims, the Court applies the Texas rules of construction to interpret the Easement. Pursuant to Texas law, the Court may construe the Easement as a matter of law only if it is unambiguous. *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018) (citing *J. Hiram Moore, Ltd. v. Greer*, 172 S.W.3d 609, 613 (Tex. 2005)). When construing the terms of an easement, courts deploy the rules of contract interpretation and look to the easement's express terms to determine its scope. *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999) (citations omitted). Under Texas law, easements are given "their plain, ordinary, and generally accepted meaning." *Id.* at 101. While construing a contract, the Court must "ascertain and give effect to the parties' intentions as expressed in the writing itself." *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex. 2012).

An easement is not ambiguous "[i]f the easement's terms can be given a definite or certain meaning." *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 686 (Tex. 2020) (citing *Parks*, 1 S.W. at 100). Conversely, an easement is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *ConocoPhillips*, 547 S.W. at 874 (citation omitted). Importantly, ambiguity does not "arise merely because parties to an agreement proffer different interpretations of a term." *Parks*, 1 S.W.3d at 100. Instead, "for an ambiguity to exist, both potential meanings must be reasonable." *Id.* When a contract is ambiguous, extrinsic evidence may be used to determine the intent of the parties. *See e.g.*, *Progressive Cnty. Mut. Ins. v. Kelley*, 284 S.W.3d 805, 807–08 (Tex. 2009) (considering extrinsic evidence in interpreting an insurance agreement due to a latent ambiguity as to the intent of the parties).

Finally, "[i]t is a well-recognized rule of construction that any ambiguity in an instrument granting an easement is to be resolved against the grantor." *Hous. Pipeline Co. v. Dwyer*, 374 S.W.2d 662, 665 (Tex. 1964) (citing *Gulf View Courts, Inc. v. Galveston Cnty*, 150 S.W.2d 872, 874 (Tex. App. 1941, writ ref''d)). "[A]nother equally well-settled rule" is that when "an instrument is open to two reasonable constructions, it will be strictly construed against its author." *Id.* (citing *Universal C. I. T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951)).

## IV.     ANALYSIS

The Government requests that the Court enter a declaratory judgment declaring (1) that the Easement does not permit Defendants to maintain mobile homes, travel trailers, RVs, campers, or manufactured homes on their properties; and (2) that Defendants must obtain written permission from ACE to have sheds, buildings, carports, or electrical lines on their properties.[12] The Government argues that a "structure for human habitation" is "anything that is constructed or built that can be lived in."[13] The Government also argues that the term "structure" is unambiguously defined as "something that is constructed or built" or "something having a definite fixed pattern."[14]

In response, Defendants contend that the term "structure for human habitation" is ambiguous as it applies to travel trailers and RVs, and that the Government's definition is overly broad and defeats the parties' intent.[15] Defendants also argue that travel trailers, RVs, and mobile homes do not fall under the Easement's second category of structures, and thus, do not require consent from the Government.[16] Before determining whether the alleged structures violate the Easement, the pertinent terms must be construed.

---

[12] Pl's. Br. for Summ. J. 32, ECF. No. 63.
[13] *Id.* at 17.
[14] *Id.*
[15] Defs.' Br. for Summ. J. 15–17, ECF No. 73.
[16] *Id.* at 27–30.

### A. "Structure for Human Habitation" and "Structure" are Both Unambiguous

Generally, the words in an easement should be "understood by their ordinary, everyday meanings." *Thomas v. Dep't of Educ.*, 931 F.3d 449, 454 (5th Cir. 2019) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 69 (2012)). When an agreement does not define a term, that term must be given its plain, ordinary, and generally accepted meaning unless doing so would defeat the parties' intent. *Parks*, 1 S.W.3d at 101.

The Easement, here, restricts two undefined categories: (1) "structures for human habitation" and (2) "structures." Under the first category, Defendants retain all rights to the property "provided that no structure for human habitation shall be permitted to *remain or be constructed* on such lands."[17] And under the second category, Defendants must receive "the written consent of the representative of the [Government] in charge . . . for the type and location of any structure and/or appurtenance thereto now existing or to be *erected or constructed*."[18]

To support its claims, the Government emphasizes the definitions of structure and habitation.[19] It argues a structure is "something constructed or built" and "something having a definite fixed pattern of organization."[20] And habitation means "live or dwell in."[21] The Defendants, on the other hand, contend that a structure for human habitation is "a place of residence," and structures are "immovable objects that are mostly excavations, earthworks, or infrastructure developments."[22]

---

[17] Joint Ex. 2, ECF No. 83 (emphasis added).
[18] *Id.* (emphasis added).
[19] Pl.'s Br. for Summ. J. 17, ECF No. 63.
[20] *Id.*
[21] *Id.*
[22] Defs.' Br. for Summ. J. 20, 29 ECF No. 73.

When construing provisions, courts "do not only look at a word or phrase in isolation" and instead "[courts] consider the text holistically, accounting for the 'full text, language as well as punctuation, structure, and subject matter.'" *United States v. Palomares*, 52 F. 4th 640, 642–43 (5th Cir. 2022) (quoting *Elgin Nursing & Rehab. Ctr. v. U.S. Dep't of Health & Hum. Servs.*, 718 F.3d 488, 494 (5th Cir. 2013)). Here, the Easement only prohibits (1) structures for human habitation that "remain or to be constructed" and (2) structures then "existing or to be erected or constructed."[23] An isolated analysis of "structure for human habitation" and "structure" could lead to a reasonable interpretation that travel trailers and RVs are "structures for human habitation" or "structures" that are restricted under the terms of the Easement. But a holistic reading of the Easement must consider these terms in connection with the meanings of "remain," "constructed," and "erected."

The term "constructed" is straightforward. It means "to build." *Constructed*, WEBSTER'S NEW COLLEGIATE DICTIONARY 178 (3d ed. 1961). The parties do not appear to dispute this interpretation. Therefore, the Easement prohibits building structures for living, and requires permission to build or erect any other structures, on the Easement. That leaves the need to interpret the term "remain." At the hearing, the parties strenuously argued over the meaning of "remain." The Government argues that "remain" means anything that stays on the land for "any second."[24] On the other hand, Defendants assert that "remain" refers to anything that "exist[ed] on the land . . . at the time this [E]asement came into existence."[25]

The Court finds the Government's interpretation of "remain"—in this context—unpersuasive. The Government's interpretation of remain means anything that could be dwelled

---

[23] Joint Ex. 2, ECF No. 83.
[24] Hr'g Tr. 171:20, United States of America v. Chesser, (2023) (No. 4:21-cv-01257-O).
[25] *Id.* at 182:10–13.

9

in —its definition of "structure for human habitation" —could not be brought onto the Easement for any moment. So, even temporary objects like tents and cars, which are "structures for human habitation" under the Government's definition, brought onto the Easement for any length of time would violate the Easement.[26] Because the Government's interpretation makes it essentially impossible for the Defendants to even bring non-permanent structures, such as cars, on the Easement, the Court rejects the Government's unreasonable interpretation to avoid construing the Easement in a manner that would lead to absurd results. *See Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011) ("[U]nder general rules of construction we avoid strictly construing an instrument's language if it would lead to absurd results.").

Instead, the Court defers to the plain meaning of the word "remain," which is "to be left after others have been removed or destroyed." *Remain*, WEBSTER'S NEW COLLEGIATE DICTIONARY 715 (3d ed. 1961). In doing so, Defendants' reading of "remain" within the context of the Easement is correct. Moreover, this interpretation parallels—and can be read harmoniously—with the second category of restrictions prohibiting structures "existing" at the time of the Easement. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 180 (2012) ("The provisions of a text should be interpreted in a way that renders them compatible, not contradictory."). This makes sense in that any "structure for human habitation" that existed at the time of the Easement's execution, as well as any other "structure" that existed then, would be prohibited. Nothing that then existed, or remained, on the Easement would be permitted.

The first prong of the Easement related to "structures for human habitation" therefore prohibits "structures for human habitation" in two instances. First, those that existed prior to the creation of the Easement could not remain on it after the Easement's execution. Second, "structures

---

[26] *See id.* at 181:17–21, 188:1–5.

10

for human habitation" could not be *constructed on* the Easement, following its execution. Similarly, the second prong prohibits "structures" then existing on the Easement or new structures from being erected or constructed on it during its term without the Government's consent.

### B. The Defendants' Travel Trailers and RVs are neither "Structures for Human Habitation" nor "Structures"

Based on the foregoing, Defendants' travel trailers and RVs are not "structures for human habitation" prohibited by the Easement because they were not constructed, *i.e.* built, *on* the Easement, nor did they exist on the Easement at the time it was executed. It is not disputed that the RVs and travel trailers arrived on the Easement by driving or towing, and were subsequently parked there. Driving or towing a travel trailer or RV onto the Easement, and parking it there, cannot reasonably be said to have been constructed on the Easement. So even if they are "structures for human habitation," they were not there at the execution of the Easement nor have they been constructed *on* it.

For similar reasons, the Court holds that RVs and travel trailers are not structures that require the Government's consent. The Easement provides that written consent from the Government is required "for the type and location of any structure and/or appurtenance thereto now existing or to be erected or constructed."[27] This clause uses the terms "erected" and "constructed."[28] As noted above, Defendants' RVs and travel trailers were not constructed on Defendants' property. Likewise, the travel trailers and RVs were not erected. "Erected" means "to raise up, as a building, to build." *Erected*, WEBSTER'S NEW COLLEGIATE DICTIONARY 279 (3d ed. 1961). Again, the RVs and travel trailers were driven or towed onto the Easement and eventually

---

[27] Joint Ex. 2, ECF No. 83.
[28] *Id.*

parked there. The travel trailers and RVs, therefore, did not exist there at the time of the Easement's execution nor were they erected or constructed on it.

Even the Government concedes that the Easement does not prohibit the Defendants from driving on the Easement because it does not "prohibit vehicles that are not . . . 'erected or constructed.'"[29] No reasonable speaker of the English language would say that "Defendants erected travel trailers on their property" or that the "travel trailers were constructed on Defendants' property simply because travel trailers and RVs are constructed objects."[30] This would be an unreasonable interpretation. *See Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1285 (5th Cir. 1994) (emphasizing that a court must "avoid any interpretation that would lead to absurd or unreasonable outcome"). Instead, the Court finds that this portion of the Easement requires, at this date, the Government's consent for any structure that is built on Defendants' property—the travel trailers and RVs were not.

Furthermore, the Easement is not ambiguous simply because the parties disagree about its meaning. "[F]or an ambiguity to exist, both potential meanings must be reasonable." *Parks*, 1 S.W.3d at 100. For the reasons set out above, the Government's position is not reasonable. This analysis is not contrary to other non-binding decisions referred to by the Government, as the parties in those cases did not appear to litigate the "remain" or "to be constructed" portion of the Easement. *See United States v. Zorger*, 407 F.Supp. 25 (W.D. Pa. 1976) (unreported out-of-Circuit opinion). Thus, the Court holds that Defendants' travel trailers and RVs are not "structures for human habitation" nor "structures" prohibited under the Easement.

---

[29] Pl.'s Br. for Summ. J. 34, ECF No. 63.
[30] *See* Hr'g. Tr. 217:24, United States of America v. Chesser, (2023) (No. 4:21-cv-01257-O) (stating "travel trailers are not erected or constructed.").

This interpretation of the Easement is also bolstered by (1) other provisions in the Easement and (2) the parties' intent. When an agreement is unambiguous, a court should determine the parties' intent by looking only within its four corners and deciding what is expressed within the agreement as a whole. *BP Am. Prod. Co. v. Red Deer Res., LLC*, 526 S.W.3d 389, 393–94 (Tex. 2017). In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument itself. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). To achieve this objective, the court "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.*

First, the Easement only gave the Government the right to "*occasionally* overflow, flood, and submerge the land."[31] As such, the Easement would not need to prohibit transient vehicles like travel trailers and RVs that can temporarily occupy the land without being constructed on the land and, ordinarily, are easily removed when the land is submerged.

Second, if the Easement were ambiguous, the Court's holding is also consistent with the parties' intent as expressed by the extrinsic evidence. *See e.g.*, *Progressive Cnty. Mut. Ins. v. Kelley*, 284 S.W.3d 805, 807–08 (Tex. 2009). Both the Government and the grantors originally understood that travel trailers and RVs were not prohibited by the Easement.[32] *Parks*, 1 S.W.3d at 101 (explaining that when a term—such as structure—is undefined, it will "be given its plain grammatical meaning unless to do so would defeat the parties' intent"). Shortly after the Easement's execution, the Government excluded mobile house trailers from the prohibitions in the Easement. In 1966, the Government approved a "trailer park for rental purposes or an owner's house trailer provided the trailers remain mobile at all times and are not blocked up, tires are kept

---

[31] Joint Ex. 2, ECF No. 83 (emphasis added).
[32] *Id*. at Ex. 3.

inflated at all times, and no concrete porches, canopies or other attachments are affixed thereto."[33] The Government again approved similar trailer parks in 1967, 1971, 1975, and 1978.[34] If the Easement were ambiguous, these approvals are instructive to the Court's analysis because they indicate that the parties did not intend to include travel trailers and RVs within the definition of "structures for human habitation" or to subsequently bar them from the Easement. *See Parks*, 1 S.W.3d at 102 ("[A]ll writings that pertain to the same transaction will be considered together, even if they were executed at different times and do not expressly refer to each other.").

Defendant Chesser's property contains two inoperable RVs, but this does not frustrate the Court's analysis. Just like travel trailers and operable RVs, there is no evidence Defendant Chesser's inoperable RVs were on her property at the time of the Easement's execution or constructed on her land afterward. If the Government, and other parties to the Easement, had wanted to prohibit travel trailers or RVs from being stored on the land, they could have prohibited any "structures for human habitation" from being placed or used on the land. But they only prohibited structures that are constructed on it.

Although the Court holds that the Easement's restrictions *do not* apply to Defendants' RVs and travel trailers, the restrictions *do* apply to Defendant Bowen's manufactured home. The differences between Defendant Chesser's RV's and Defendant Bowen's manufactured home are stark. The manufactured home's wheels have been removed and it appears to rest on concrete or cinder blocks.[35] Because Defendant Bowen's manufactured home was manipulated onto structures built on the property, it has been constructed on the Easement and is therefore a prohibited "structure for human habitation." *See United States v. Stephens*, No. 08-CV-450, 2009 WL

---

[33] *Id.*
[34] *Id.* at Ex. 5, 6, 8, 9.
[35] *Id.* at Ex. 58.

14

1422574, at *1 (N.D. Tex. May 19, 2009) (enjoining a mobile home as a "structure for human habitation").

For the foregoing reasons, Plaintiff is entitled to judgment on Defendant Bowen's manufactured home and Defendants are entitled to judgment with respect to the RVs and travel trailers.

### C. Other "Structures"

The Government also seeks to permanently enjoin Defendants from maintaining sheds, carports, porches, covered patios, and electrical utilities that are unauthorized under the Easement.[36] The Court finds that these objects fit squarely within the Easement's restrictions on structures. As defined above, the plain meaning of a "structure" is any object, not for human habitation, that is erected (*i.e.*, raised up, or constructed, or built on the Easement). It is clear the sheds, carports, porches, covered patios, and electrical lines were constructed or erected on the Easement. As such, they cannot remain absent the Government's consent. The Government established that it has not consented to these structures. Accordingly, Plaintiff is entitled to judgment in its favor on the sheds, carports, porches, covered patios, and electrical utilities.

### D. Affirmative Defenses

Finally, Defendants' affirmative defenses fail. The Court agrees with the Government that estoppel and waiver do not apply against them in this case. *See Andrade v. Gonzales*, 459 F.3d 538, 545 n.2 (5th Cir. 2006) (stating "[i]t is unclear whether equitable estoppel can *ever* apply to the Government"); *Utah Power & Light Co.*, 243 U.S. 389, 409 (1917) ("It is well established that . . . waiver based on inaction do[es] not apply against the Government in situations where it is seeking to enforce its property rights."). Defendants have also not been deprived of any property

---

[36] Pl.'s Br. for Summ. J. 22, ECF No. 63.

interests and, thus, they have no due process claim. Rather, the Government is merely suing to enforce property rights that exist pursuant to the terms of the Easement. As such, Defendants' affirmative defenses fail.

## V. CONCLUSION

The Court holds that:

a. Defendants Chesser, Drake, Bowen, Keating, Brummitt, and Bill's travel trailers are not "structures for human habitation" or "structures" under the Easement.

b. Defendant Chesser's inoperable RVs are not "structures for human habitation" or "structures" under the Easement.

c. Defendant Bowen's manufactured home is a "structure for human habitation."

d. Defendants Chesser, Drake, Keating, and Brummitt's sheds are "structures" under the Easement.

e. Defendants Keating, Brummitt and Bill's covered patios and porches are "structures" under the Easement.

f. Defendant Green and Bill's carport is a "structure" under the Easement.

g. Defendants Chesser, Drake, Bowen, Keating, Brummitt, and Green's electrical utilities are "structures" under the Easement.

Accordingly, the Court **ORDERS** as follows:

a. Defendants are enjoined from maintaining or placing unauthorized structures, including but not limited to, sheds, covered patios, porches, carports, and electrical utilities on the Easement.

b. Defendant Bowen shall remove the manufactured mobile home from the Easement.

c. Further, (1) ACE may enter upon Defendants' properties if Defendants fail to comply with this Order to remove all unauthorized habitable structures and other structures from the Easement; and (2) Defendants are enjoined from interfering with ACE's ability to remove all unauthorized habitable structures and other structures.

**SO ORDERED on this 26th day of September, 2023.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**